DEUEL v. GAYNOR et al.

(Supreme Court, Appellate Division, First Department.   December 2, 1910.)

1. MUNICIPAL CORPORATIONS (§ 124*)—REMOVAL OF OFFICER—EXPENSES OF
   PROCEEDINGS—LIABILITY OF CITY.
    Greater New York Charter (Laws 1901, c. 466) § 231, authorizing the
   board of estimate and apportionment to audit and allow as charges against
   the city the reasonable cost, counsel fees, and expenses incurred by any
   city magistrate or police justice, etc., who is the successful party in any
   proceeding to remove him from office, is constitutional.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §-
   124.*]

2. MANDAMUS (§ 101*)—PEREMPTORY WRIT—PERFORMANCE OF LEGAL DUTIES.
    The fact that the board of estimate and apportionment had rejected a
   claim of a justice of the Court of Special Sessions against the city for
   reasonable expenses incurred in his successful defense of a proceeding to
   remove him, pursuant to Greater New York Charter (Laws 1901, c. 466) §
   231, on the ground that the board had no power to allow such expenses to
   a justice of that court, would not prevent the issuance of a peremptory
   writ of mandamus to compel the board to allow such expenses, if it was
   their legal duty to consider the claims, and allow them.

   [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 211–216; Dec.
   Dig. § 101.*]

3. MUNICIPAL CORPORATIONS (§ 159*)—OFFICERS—REMOVAL—EXPENSES OF RE-
   MOVAL PROCEEDING—LIABILITY OF CITY—CONSTRUCTION OF STATUTE.
    Greater New York Charter (Laws 1901, c. 466) § 231, authorizing the
   board of estimate and apportionment to audit and allow, as charges
   against the city, the reasonable cost and expenses incurred by any city
   magistrate, etc., who is a successful party to a proceeding to remove him
   from office, is not permissive, but requires the board to consider such
   claims and audit and allow the reasonable expenses, etc., incurred in such
   proceedings.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
   159.*]

4. MUNICIPAL CORPORATIONS (§ 159*)—OFFICERS—PROCEEDINGS TO REMOVE—
   EXPENSES—REPAYMENT—STATUTES.
    Under Consolidation Act (Laws 1882, c. 410) §§ 1541, 1546, 1570, and
   section 196, as amended by Laws 1888, c. 574, and Laws 1896, c. 431; Laws
   1895, c. 601, §§ 2, 3, 12, 13, 18, and Greater New York Charter (Laws 1897,
   c. 378, and, as revised, Laws 1901, c. 466) §§ 231, 1608, a justice of the
   Court of Special Sessions was entitled to present for allowance by the
   board of estimate and apportionment a claim for his expenses in success-
   fully opposing a proceeding for his removal.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
   159.*]

5. MUNICIPAL CORPORATIONS (§ 159*)—OFFICERS—REMOVAL—EXPENSES OF UN-
   SUCCESSFUL PROCEEDINGS—LIABILITY OF CITY—DISCRETION IN ALLOWING.
    Under Greater New York Charter (Laws 1897, c. 378, as revised by
   Laws 1901, c. 466) § 231, authorizing the board of estimate and apportion-
   ment to audit and allow as charges against the city the reasonable cost
   and expenses incurred by any commissioner, magistrate, or police justice,
   who is successful in a proceeding to remove him from office, the amount of
   any such expenses allowed, is within the board's discretion.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
   159.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Application by Joseph M. Deuel for mandamus against William J. Gaynor, Mayor of the City of New York, and others, comprising the Board of Estimate and Apportionment. From an order granting a peremptory writ, defendants appeal. Affirmed.

See, also, 127 App. Div. 640, 111 N. Y. Supp. 969.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Clarence L. Barber (Theodore Connoly, on the brief) and Archibald R. Watson, Corp. Counsel, for appellants.

Hoadley, Lauterbach & Johnson (Charles L. Craig, of counsel), for respondent.

CLARKE, J. Appeal from an order of the Special Term directing a peremptory writ of mandamus to issue to the board of estimate and apportionment, "to forthwith consider and determine, as provided in section 231 of the Greater New York charter (Laws 1901, c. 466), a certain application heretofore made by the petitioner to the said board of estimate and apportionment, requesting it to audit and allow as charges against the city of New York, the reasonable cost, counsel fees and expenses, paid or incurred by said Joseph M. Deuel, while a justice of the Court of Special Sessions of the city of New York for the First Division, to defend himself and his office in a certain proceeding in the Appellate Division of the Supreme Court of the state of New York, entitled 'In the Matter of the Application for the Removal of Joseph M. Deuel from the office of Justice of the Court of Special Sessions of the City of New York for the First Division' upon certain charges and specifications in said petition contained; and after making such audit to make such allowance for such costs, counsel fees, and expenses as may in the honest judgment of the said board of estimate and apportionment of the city of New York be just and proper." The petition, after setting up the appointment of the petitioner as a justice of the Special Sessions, the filing of charges and the proceedings had thereon, and the final dismissal thereof, alleges that he was obliged to retain counsel, and that he had paid out for his reasonable counsel fees and expenses $11,520.05; that on the 21st of December, 1909, he presented to the board of estimate and apportionment a petition requesting it to audit and allow him as a charge against the city the amount expended in his defense in said proceeding, pursuant to the provisions of section 231 of the Greater New York charter; that on or about the 24th of June, 1910, the board of estimate and apportionment adopted a resolution rejecting the request on the express ground that no power was vested in the board of estimate and apportionment to act in the premises; that said action of the board was taken pursuant to an opinion rendered by the corporation counsel to the effect that section 231 of the charter has no application to justices of the Court of Special Sessions. He further alleges that he is advised that the action of the board was based upon an erroneous interpretation of the law, and that your petitioner is within the purview

of section 231, and that the said board not only has the power, but is charged with the duty of determining said application of petitioner on its merits.

In the Matter of Kane v. McClellan, 110 App. Div. 44, 96 N. Y. Supp. 806, the Appellate Division in the Second Department unanimously held (Willard Bartlett, J., writing) that section 231 of the charter was constitutional as applied to expenses incurred and rights arising after the legislation, and allowed a peremptory writ commanding the board of estimate and apportionment to consider and determine the petitioner's claim, and audit and allow his reasonable costs, counsel fees, and expenses paid and incurred. So, three of the grounds of objection interposed in the affidavit in reply, namely, that the section is unconstitutional, that, as the board of estimate and apportionment has acted upon the claim, the peremptory writ will not lie, and, if the said section is constitutional, then it is merely permissive in form, are disposed of by the decision cited. The real question is whether a justice of the Special Sessions comes within the purview of the section.

Prior to May 10, 1895, on which day chapter 601 an "act in relation to the inferior courts of criminal jurisdiction in the city and county of New York" was passed, there existed in the then city of New York under the provisions of the consolidation act (Laws 1882, c. 410) 11 police justices. Section 1541. There was a Court of Special Sessions, but there were no separate and distinct Special Sessions Justices. Section 1546 of the consolidation act provided that the police justices should constitute the board of police justices; section 1570, that the police justices, by the vote of a majority, shall have the exclusive power to appoint a clerk, deputy clerk, stenographer and other officers of the Court of Special Sessions; section 1572, that the Court of Special Sessions may be held as often and at such times as the justices thereof may think expedient. It may be held by any three of the police justices who shall sit alternately, except that one of their number may be selected to preside and the said justices shall meet in convention and assign the justices to hold the several terms of said court. At that time section 196 of the consolidation act, as amended by chapter 574 of the Laws of 1888, provided that "The board of estimate and apportionment is hereby authorized to audit and allow as charges against the city the reasonable costs, counsel fees with interest, and expenses paid and incurred, or which shall hereafter be paid or incurred by any commissioner or police justice who shall have been a successful party in any proceeding to remove him from office." So that prior to May 10, 1895, any police justice, whether assigned to sit in the Court of Special Sessions or not, would have been entitled to submit to the board of estimate and apportionment and have that board audit and allow as charges against the city the reasonable costs and expenses of defending himself against a proceeding to have him removed from office. Chapter 601 of the Laws of 1895, provided by section 1, that "from and after midnight of the 30th day of June, 1895, the office of police justice in the city and county of New York is abolished, and all power, authority, duties and jurisdiction then vested in the police justices of the city and county of New York and in the

courts held by them, including the Court of Special Sessions, and in the board of police justices, and in the clerks, deputy clerk, police clerks and police clerks' assistants, and in all other officers or employés of said justices or courts, or of the board of police justices, shall cease and determine." By section 2 it was provided that there shall be nine city magistrates in the city and county of New York, and by section 3 they were to exercise the powers and jurisdiction theretofore vested by law in the police justices, excepting proceedings respecting bastards. Sections 4 to 11, inclusive, describe the organization of the board of city magistrates and the manner of conducting said courts and keeping the records thereof, and other matters relating to the newly created City Magistrate's Courts.

By section 12 it was provided that before June 20, 1895, the mayor should appoint five justices of the Court of Special Sessions of the city and county of New York at a salary of $9,000 per year. Section 13 provided that:

"On and after the 1st day of July, 1895, the Court of Special Sessions of the city and county of New York shall be composed of and must be held by three of the justices of the Court of Special Sessions appointed pursuant to this act; and any order, determination or judgment of two of said justices shall be the order, determination or judgment of said court. The said court shall sit in every month in the year."

Section 14 defines the jurisdiction of the Court of Special Sessions; section 15 enacts that the justices are also magistrates; section 16 provides for rules; section 17, for clerks; section 18 provides as follows:

"All provisions of law not inconsistent with this act, in force on the 30th day of June, 1895, relating to the Court of Special Sessions and to the police justices holding the same * * * shall remain in force and shall thereafter apply to the Court of Special Sessions created by this act, and the justices of said court appointed as herein provided."

On the 30th day of June, 1895, a provision of law, to wit, section 196 of the consolidation act, as amended by chapter 574 of the Laws of 1888, and relating to the police justices holding the Court of Special Sessions, to wit, authorizing the audit and allowance by the board of estimate and apportionment of expenses for defending an attack upon their office, was in force, and under section 18 cited, supra, we have no doubt that thereafter and until the creation of the greater city said provisions remained in force and effect, and could have been availed of if necessary by a justice of the new Court of Special Sessions created by the act of 1895.

While it is true that the former police justices and the former Court of Special Sessions were abolished and two new courts created, to wit, the City Magistrate's Court and the Court of Special Sessions, yet the great body of the law applicable to the two former courts, except as changed or modified, or as inconsistent with the act of 1895, was continued and made applicable thereto. This particular provision made applicable to the Court of Special Sessions created by this act, and the justices of said court, which had applied to the police justices, both those holding the old Court of Special Sessions and the others, was in no way inconsistent with any of the provisions of the new act.

By chapter 431 of the Laws of 1896, section 196 of the consolidation act was again amended so as to read:

"The board of estimate and apportionment is hereby authorized to audit and allow as charges against the city the reasonable costs, counsel fees and expenses paid or incurred, or which shall hereafter be paid or incurred by any commissioner, city magistrate or police justice who shall have been a successful party in any trial or proceeding to remove him from office," etc.

It will be noted that "police justice" was retained, although the office had been abolished, and that "city magistrate" was inserted, while no mention was made of a justice of the Court of Special Sessions. The reason for the distinction may be that the language of section 11 of chapter 601 of the Laws of 1895, "All provisions of law relating to or defining the powers, jurisdiction and duties of the police justices and the courts held by them  *  *  *  in so far as the same are consistent with this act, shall thereafter apply to and control the city magistrates appointed pursuant to this act, and the courts held by them," was not considered broad enough to extend the provisions of section 196 of the consolidation act to the city magistrates, because what was made applicable to them were the provisions of law relating to or defining their powers, jurisdiction and duties, while under section 18 the language was, as applied to the Court of Special Sessions:

"All provisions of law relating to the Court of Special Sessions and to the police justices holding the same, shall thereafter apply to the Court of Special Sessions and the justices of said court."

It does not seem to us that any other construction is reasonable or logical. We are unable to perceive why any legislative discrimination should have been made between the city magistrates and the justices of the Special Sessions. They were all justices of inferior courts of criminal jurisdiction, and successors of and dividing between them the jurisdiction of the two earlier courts. If a city magistrate is to be reimbursed for his expenses in defending his office, there is no reason why a justice of the Special Sessions should not. In 1897 the charter of the Greater City (chapter 378 of the Laws of 1897) was passed, and section 231 thereof re-enacted section 196 of the consolidation act as amended by chapter 431 of the Laws of 1896; and the Revised Charter (section 466 of the Laws of 1901) re-enacted the same.

Section 1608 of the Charter provides that:

"So far as the provisions of this act are the same in terms or in substance and effect as the provisions of the said consolidation act, or of other acts of the Legislature now in force relating to or affecting the municipal and public corporations, or any of them, herein united and consolidated, this act is intended not to be a new enactment but a continuation of said consolidation act of 1882, and said other acts, and is intended to apply the provisions thereof as herein modified to the city of New York as herein constituted, and this act shall accordingly be so construed and applied."

When the proceeding for the removal of the relator was before this court, its jurisdiction was challenged because while section 1401a of the Revised Charter provided that a city magistrate or police clerk may be removed for cause after due notice and an opportunity for being heard by the Appellate Division of the Supreme Court within the

division for which such magistrate or police clerk was appointed, there was no provision providing for the removal of a justice of the Court of Special Sessions, but we held, in the Matter of Deuel, 116 App. Div. 512, 101 N. Y. Supp. 1037, that the provisions of the act of 1895 still being in force, this court had jurisdiction of the proceeding. The provision referred to was that contained in section 28 of the act which provided that the city magistrate and their clerks, and the justices of the Court of Special Sessions and the clerks of said court, appointed pursuant to this act, may be removed after due notice and an opportunity for being heard by the General Term in the First Department, or after the 1st of January, 1896, by the Appellate Division of the Supreme Court in the First Department.

As we held that the act of 1895 was still in existence for the purpose of giving jurisdiction to this court to consider charges upon which were based a motion for the removal of the relator, notwithstanding the fact that by the charter there was a provision only for such proceedings in the case of a city magistrate, it seems only consistent to hold that the provisions of said act, providing for the audit and allowance of the expenses of such proceeding, are continued, notwithstanding that in the charter city magistrates are mentioned and the justices of the Special Sessions are not. We are of the opinion, therefore, that the relator, as matter of right, was entitled to present his petition to the board of estimate and apportionment; that it was the duty of that board to consider the same upon its merits; and as it appears that it failed so to consider it, solely upon the ground of want of power, that the order appealed from was right.

We think the amount to be allowed, if any, is within the discretion of the board. The language of the statute is "the board is hereby authorized to audit and allow the reasonable costs, counsel fees, and expenses paid or incurred." In People ex rel. Brown v. Board of Apportionment, 52 N. Y. 224, Andrews, J., said:

"To audit a claim ex vi termini imports the exercise of judgment; and a claimant proceeding under this statute, and invoking in his behalf the exercise of the power conferred on the board of audit, was bound to submit to the jurisdiction, as defined by the statute, and could not demand that the board should allow his claim without passing upon his right to payment."

In People ex rel. Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739, the court said:

"To audit is to hear—to examine an account; and in its broader sense it includes its adjustment or allowance, disallowance or rejection."

Again, "If the judgment constitutes an absolute liability against the town, why go through the mere formality of presenting to the board of audit an allowance at all? Or what necessity or propriety in asking the court's mandate to the board of auditors to audit and allow it? If the town board of auditors have no discretion to exercise in allowing or rejecting such claim, why not present it at once in the first instance to the board of supervisors to levy and raise the money to pay it." See, also, People ex rel. Hamilton v. Board of Supervisors, 35 App. Div. 239, 54 N. Y. Supp. 782.

We interpret this statute, therefore, as conferring authority upon the board to examine into the claim and to allow such sum as it deems reasonable.

The order appealed from should therefore be affirmed, with $10 costs and disbursements to the respondent.

INGRAHAM, P. J., and SCOTT and MILLER, JJ., concur.

LAUGHLIN, J. I concur in the views expressed by Mr. Justice CLARKE with respect to the authority of the board of estimate and apportionment to audit and allow the claim of the petitioners, but I am of opinion that the proper construction of the statute is that the authority carries with it a duty to audit and allow the reasonable cost, counsel fees, and expenses necessarily paid or incurred by the petitioners in successfully defending against the proceeding to remove him from office.

Of course many statutes, known as enabling acts, merely confer authority on municipal bodies, boards, or officers to audit and allow in their discretion claims founded on an equitable or a moral obligation although not enforceable, but as I view it this is not of that character, and, if it were, I think that there would be no propriety in granting a writ of mandamus, because if there be no duty to allow the claim or any part of it even though it be established by uncontroverted evidence, then it is quite immaterial on what ground it has been rejected by the board. Of course the board of estimate and apportionment is vested with discretion in the sense that the authority to determine what is a reasonable amount to allow is vested in it, but it is not, in my opinion, vested with discretion to allow or not to allow such reasonable amount when determined by it.

I am of opinion that the Legislature itself determined that all such claims should be paid by the city on the reasonable amount thereof being determined by the board, and did not intend to leave it discretionary with the board to allow one and to reject another.